CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 0 4 2019

JULIA C. DUDLEY, CLERK
BY: *[signature]*
DEPUTY CLERK

VanIN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EUGENE D. NOLAN, | ) | Case No. 7:18-CV-00408 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAROLD CLARKE, et al., | ) | By: Hon. Michael F. Urbanski |
| Defendants | ) | Chief United States District Judge |

## MEMORANDUM OPINION

Eugene D. Nolan, an inmate in the custody of the Virginia Department of Corrections,

("VDOC"), who currently is incarcerated at Sussex II State Prison ("Sussex II"), complains

that defendants Harold Clarke, Rose Durbin, Barry Marano, Keith Dawkins, Mark Amonette,

Christopher Lovern, Melvin Davis, Ms. Massenburg, Nurse Mays, Correctional Officer Burke,

Sergeant Tisdale, Correctional Officer Van Der Schagt, and Lieutenant Gibbs violated his

rights under the Constitution, the Americans With Disabilities Act ("ADA"), and Section 504

of the Rehabilitation Act ("RA"). Proceeding pro se, Nolan filed this lawsuit seeking relief

against defendants on August 20, 2018. ECF Nos. 1, 10. Defendants filed a motion to dismiss

on November 26, 2018, to which Nolan responded on January 10, 2019. ECF Nos. 16, 24.

The parties have fully briefed the issues. For the reasons set forth below, defendants' motion

to dismiss is **GRANTED** and Nolan's claims are **DISMISSED**.

## I. Background

### A. Facts

Nolan, who has been diagnosed with cone dystrophy in both eyes, is legally blind, color

blind and very light sensitive. In March 2017, a doctor recommended that he be allowed to

have television with a 24-inch or larger screen, a low-vision digital clock, specialized amber sunglasses, and a "Ruby XL 7-inch HD" magnifier. In May 2018, the magnifier and specialized sunglasses were dispensed to him. It also was recommended that Nolan be placed in the visually impaired program at the Deerfield Correctional Center ("Deerfield") so that he could receive services from the Virginia Department for the Blind and Vision Impaired. Deerfield offers specialized devices and equipment to visually impaired inmates and permits participation in programs and daily activities designed for their rehabilitation.

Nolan has been incarcerated in VDOC since 2007 and has been transferred in and out of the Deerfield unit. He was at Deerfield from March 2011 to June 2011 when he was transferred to the segregation unit at Greensville Correctional Center ("Greensville"). He later was released to the general population at Greensville and then transferred to the Sussex II segregation unit in October 2011. In December 2011 he was transferred to the Sussex I segregation unit and then to the general population.

In September 2012 Nolan was transferred to Wallens Ridge State Prison and placed in a pod for the hearing impaired. In July 2014 he was granted a medical transfer to Deerfield. In October 2014 Nolan was transferred back to the Greensville segregation unit following a disciplinary infraction. In December 2014 the disciplinary infraction was overturned and he was placed in an ADA pod for the hearing impaired at Greensville. In July 2015, following the filing of an administrative complaint, Nolan once again was transferred to Deerfield.

In September 2015 Nolan was accused of a disciplinary infraction, which he denied, and was transferred first to Greensville's segregation unit and then to the River North Correctional Center in October 2015. The warden there asked Nolan if he would be able to

determine the presence of attack dogs, and Nolan told him he would not. Nolan was placed in the pod for prisoners in wheelchairs. In 2016 Nolan was transferred first to Red Onion State Prison's segregation unit following disciplinary charges, and later transferred back to the Greensville pod for hearing impaired inmates, and then to the Green Rock Correctional Center ("Green Rock"), where he was the only legally blind inmate at the unit. In May 2018, Nolan was transferred to Sussex II, where he remains.

Nolan alleges that despite the recommendation made by the doctor at the optometry clinic in 2017 that he be allowed to have a 24-inch television and a DVD player with cordless/wireless headphones, his request for such television and DVD player was disapproved by defendants, including defendant Amonette, the VDOC chief physician, as not medically required. He claims that he needs the DVD player to watch educational and religious programming.

When he arrived at Green Rock, prison officials told him that they did not know how to accommodate him, but sent a memo to staff alerting them that Nolan is blind. Nolan claims that the memo created a hostile environment which manifested when he needed to request an accommodation. For example, Defendant Tisdale asked Nolan to step behind a yellow line while he was waiting for commissary. When Nolan explained that he could not see the line because he was blind, Tisdale asked him why he did not have a seeing eye dog, even though he knows the prison does not allow seeing eye dogs. On another occasion, defendant Burke asked Nolan to step behind a red line and when Nolan said he could not see the red line, Burke told him that he should stay in his cell if he could not see the line.

In another incident, despite a memo having been sent to prison staff reminding them that they needed to notify Nolan via intercom in his cell when his cell door was closing, he was not warned. Defendant Van Der Schagt closed the cell door and it caught Nolan's shoulder and jammed it.

Nolan also complains that VDOC did not make a written food menu available to him in a font large enough for him to read. When Nolan asked for a menu he was able to read, defendant Lovern, the unit manager and ADA coordinator at Green Rock, told him that a larger-print menu was not required by the ADA, but provided to him as a favor. Nolan was told to ask any staff member about what was on the menu and also told that arrangements had been made to provide him with a readable menu. Nolan asserts that when he asked officers what was on the menu they would say they did not know. It is unclear whether Nolan was ever provided with large-font menus.

On March 29, 2018, Defendant Massenburg placed Nolan on a 90-day grievance suspension. In April 2018 Nolan filed a complaint asserting that Green Rock officials were subjecting him to cruel and unusual punishment and he asked to be transferred to Deerfield. A meeting was held on April 23, 2018 with defendant Durbin, the ADA Supervisor for VDOC, and defendant Marano, the VDOC statewide ADA coordinator. Defendant Davis, the Green Rock warden, refused to transfer Nolan, but offered to place him in the honors pod or the veterans pod, neither of which accommodate blind prisoners. Defendant Lovern suggested placing Nolan in the Shared Alliance Management System which houses inmates with "mental/wheelchair/vulnerable concerns." Nolan responded that he would like to be transferred to an appropriate facility and suggested Deerfield, Augusta Correctional Center,

Nottoway Correctional Center, or Lawrenceville Correctional Center. Davis, Marano, and Durbin rejected his request to go to Augusta and Nottoway because they have stairs.

Nolan's request for a transfer was denied and Durbin and Davis suggested Nolan be given a job as floor tech. Durbin also advised that Nolan could not be placed on grievance restriction because of his ADA status and the restriction was removed.

On May 22, 2018 Nolan was seen by an optometrist who recommended placement at Deerfield. One week later, he was transferred to Sussex II. Nolan has brought a number of claims against the staff at Sussex II, but those claims were severed and transferred to the United States District Court for the Eastern District of Virginia on October 15, 2018. ECF No. 11.

## B. Causes of Action

Based on these factual allegations, Nolan alleges that the following defendants violated his rights under the Eighth and Fourteenth amendments to the Constitution and also under the ADA: (1) Defendants Clarke, Durbin, Marano, and Dawkins have violated his rights by allowing Nolan to be housed in a facility where his needs as a blind person are not met and where he is in danger and is exposed to officials who insult his dignity; (2) Defendant Amonette has violated Nolan's rights by disapproving his transfer to Deerfield, and by disapproving a 24-inch television and a cordless/wireless DVD player; (3) Defendant Lovern violated Nolan's rights by not providing reasonable accommodations and exposing Nolan to officials who insulted his human dignity; (4) Defendant Davis violated Nolan's rights when he accepted him at Green Rock; (5) Defendant Massenburg violated Nolan's rights when she placed him on grievance restriction; (6) Defendant Mays violated his rights when she refused

to put in a request on his behalf for transfer to Deerfield; (7) Defendant Burke violated Nolan's rights when he told Nolan he needed to stay in his cell if he could not see the red lines; (8) Defendant Tisdale violated Nolan's rights when he asked him why he did not have a seeing eye dog; (9) Defendant Van Der Schagt violated Nolan's rights when she did not warn him that the cell door was closing so Nolan did not get out of the way; and (10) Defendant Gibbs violated Nolan's rights when he failed to provide a menu in a font large enough for Nolan to read.

For relief, Nolan requests $800,000 in damages. In addition, he seeks injunctive relief in the form of an order from the court that he be transferred to Deerfield so that he can receive services from the Virginia Department for the Blind and Vision Impaired.

## C. Motion to Dismiss

Defendants make the following arguments in their motion to dismiss: (1) Nolan has failed to name a proper defendant for the ADA and RA claims; (2) His ADA claim for money damages fails to allege a constitutional violation, meaning defendants are entitled to sovereign immunity; (3) Because Nolan's ADA claim for money damages is barred by sovereign immunity, this court lacks jurisdiction to adjudicate the ADA claim; (4) His claims for injunctive relief are moot because he has been transferred to a different facility; (5) He has failed to allege sufficient facts to make out a claim that he was discriminated against based on his disability as required by the RA; (6) He fails to allege adequate personal involvement on the part of some named defendants; and (7) His injuries are de minimis under the Prison Litigation Reform Act.

## II. Analysis

### A. Rule 12(b)(1)

Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), alleging that this court lacks subject matter jurisdiction. They argue that they are entitled to sovereign immunity and that this court is without jurisdiction to adjudicate Nolan's claims because sovereign immunity is jurisdictional in nature, citing F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

When a defendant argues that a claim fails to allege facts upon which subject matter can be based, all the facts alleged in the complaint are assumed to be true and the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant alleges that the jurisdictional allegations in a complaint are not true, a trial court may go beyond the allegations of the complaint and hold an evidentiary hearing to determine if there are facts to support the jurisdictional allegations. Id.

When the jurisdictional facts are intertwined with the facts central to the merits of a dispute, courts generally assume jurisdiction and proceed to address the merits. Id.; Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). A trial court should dismiss under Rule 12(b)(1) only when jurisdictional allegations are "'clearly ... immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous.'" Id. (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

In this case, defendants do not argue that Nolan's recitation of facts is untrue and therefore the allegations in his complaint are assumed to be true. The court finds that Nolan's assertion of jurisdiction is inextricably tied to his allegations that his rights have been violated

under the Constitution and statutes. Accordingly, the court will not dismiss his claims under Rule 12(b)(1) but will proceed to analyze his claims under Rule 12(b)(6).

## B. Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When ruling on a motion to dismiss, the court accepts "the well-pled allegations of the complaint as true" and "construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court need not accept as true "'legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement, . . . unwarranted inferences, unreasonable conclusions, or arguments.'" Richardson v. Shapiro, 751 F. App'x 346, 348 (4th Cir. 2018) (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)) (internal quotation marks omitted). Thus, a complaint must present sufficient nonconclusory factual allegations to

support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196-197 (4th Cir. 2009) (affirming dismissal of claim that simply stated a legal conclusion with no facts supporting the allegation) and King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim.") (quoting Iqbal, 556 U.S. at 679).

**(1) Liability under 42 U.S.C. § 1983**

To prevail on a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish (1) that he has been deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States and (2) that the conduct about which he complains was committed by a person acting under color of state law. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998). Plaintiffs may seek money damages against defendants for their official actions when they are sued in their individual capacities, subject to some exceptions and immunities. Hafer v. Melo, 502 U.S. 21, 30-31 (2001).

Claims for money damages brought against defendants in their official capacities are not cognizable in § 1983 lawsuits because neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, a claim brought against an official in his or her official capacity is not considered a suit against the official, but rather a suit against the official's office. Because the Eleventh Amendment prohibits courts from entertaining an action against the state, Alabama

v. Pugh, 438 U.S. 781, 782 (1978), it also prohibits courts from considering claims against defendants in their official capacities. Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996).

However, a plaintiff may seek prospective injunctive relief against state defendants in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); Graham v. Kentucky, 473 U.S. 159, 167 n. 14 (1985). "To ensure enforcement of federal law . . . the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004).

Nolan does not specify whether he is bringing his claims against defendants in their individual or official capacities. To the extent he intended to sue defendants for money damages in their official capacities, the claims against defendants are **DISMISSED**.

**(a) Eighth Amendment**

The Eighth Amendment protects convicted inmates from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337, 345-346 (1991). The Constitution does not mandate comfortable prisons, but neither does it allow inhumane ones. Id.; Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison officials must provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and also must take reasonable measures to ensure the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). "To make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotations and citations omitted). "[I]n order to withstand summary judgment on an

Eighth Amendment challenge to prison conditions[,] a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Id. at 1381. The alleged deprivation must be objectively "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991), and must result in the denial of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To show deliberate indifference, the plaintiff must show that the prison official had a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-303.

In this case, none of the actions that Nolan complains about rise to the level of an Eighth Amendment violation. The remarks by Burke and Tisdale, while insensitive and unprofessional, were not "sufficiently serious" and did not result in the denial of the minimal civilized measure of life's necessities. See Adkins v. Cabell, No. 3:06-0579, 2010 WL 3521594, *2 (S.D.W.V. 2010) ("[A]llegations of verbal abuse, verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation."); Francis v. Hughes, No. 3:05-418-JFA-JRM, 2006 WL 2716458 (D.S.C. 2006) (finding that insults to inmate's religious beliefs do not rise to the level of a constitutional violation); and Keenan v. Hall, 83 F.3d 1983, 1092 (9th Cir. 1996) (finding verbal abuse of inmates by guards, without more, fails to state a claim under § 1983).

Nolan also fails to state a claim for an Eighth Amendment violation based on his allegation that he was not provided a menu with a large font. Such a denial does not amount to a serious deprivation of a basic human need.

Nor does defendant Van Der Schagt's failure to warn Nolan that his cell door was closing rise to the level of a constitutional violation, because Nolan alleges no facts to show

that the closing of the door was a "sufficiently serious" deprivation of a basic human need, or that Van Der Schagt acted willfully. At most, Nolan has alleged that Van Der Schagt acted negligently in shutting the door on his shoulder, which does not state a claim under the Eighth Amendment. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Nolan similarly has failed to state a claim that his Eighth Amendment rights were violated by the 90-day grievance ban because inmates have no constitutional right to file a grievance or access any such procedure voluntarily established by the state. Booker v. South Carolina Department of Corrections, 855 F.3d 533, 541 (4th Cir. 2017) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)). Moreover, the grievance ban was rescinded and Nolan describes no harm that came to him while the ban was in place.

Nolan also alleges that all the decisions made with regard to his being placed anywhere but Deerfield violated his rights under the Eighth Amendment. However, Nolan has not alleged that the placements have resulted in serious deprivation of a basic human need. See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999) (granting summary judgment on claim that long term segregated confinement violates Eighth Amendment because inmates did not allege failure to provide them with adequate food, clothing, shelter, or medical care, or to protect them from harm, or otherwise show an extreme deprivation). Accordingly, he has failed to state an Eighth Amendment claim based on his factual allegations.

### (b) Fourteenth Amendment

Nolan asserts broadly that all the acts by the defendants violated his rights under the Fourteenth Amendment. For the most part, he does not specify whether he is alleging

violations of procedural due process or equal protection, and does not describe how the actions violated either right. His assertions are insufficient to state a claim because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

However, Nolan did make one specific allegation when he asserted that the denial of the DVD player with cordless/wireless headphones violated his right to equal protection because other vision impaired inmates were approved for and possess a similar DVD player. Defendants argue that Nolan cannot make out an equal protection claim because he stated that he was the only vision impaired prisoner at Green Rock, meaning that he could not be similarly situated to any other prisoner there. Nolan responded that he was not referring to other prisoners at Green Rock, but to prisoners at Greensville who are vision impaired and have been provided a similar DVD player.

The equal protection clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike by the government. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439-41 (1985). To establish a violation of the Equal Protection Clause, a plaintiff must show that he has been treated differently from others who are similarly situated and that the unequal protection was intentional or purposeful. King, 825 F.3d at 220. If a plaintiff makes such a showing, the court then determines whether the disparity in treatment can be justified under the requisite level of scrutiny. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Even with the clarification by Nolan that he was referring to inmates at Greensville, he has not made out a claim for violation of his right to equal protection because he did not plead

facts to show that the other prisoners are similarly situated to him. A review of the documents Nolan attached to his complaint indicates that the recommendation for the DVD player with wireless headphones was subject to approval by the health care provider at Greensville, who did not approve it. ECF No. 1-1 at 38-39. Although Nolan claims that other vision-impaired inmates at Greensville were allowed to purchase a DVD player, he does not identify any vision-impaired inmates who obtained a similar DVD player, or indicate how many other inmates obtained the item, or why it was recommended and approved for them. In short, he has failed to show that he was similarly situated to other inmates and simply makes a conclusory allegation that his right to equal protection has been violated.

Because Nolan has failed to state a claim for violation of his constitutional rights, his claims based on the Eighth and Fourteenth Amendments are **DISMISSED**.

### C. ADA Claim and RA Claims

Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). To make out a claim under the ADA, a plaintiff must allege (1) that he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was excluded from participation in or denied benefits of such a service,

program, or activity, or otherwise was discriminated against, on the basis of his disability. Constantine v. Rectors and Visitors of George Mason University, 411 F.3d 474, 498 (4th Cir. 2005). Title II applies to inmates in state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 208 (1998).

The RA was enacted seventeen years before the ADA and Title II of the ADA is closely related to Section 504 of the RA. To the extent possible, courts construe similar provisions in the two statutes consistently with one another. Jarboe v. Maryland Dept. of Public Safety and Correctional Services, No. ELH-12-572, 2013 WL 1010357 at *3 (D. Md. 2013) (citing Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 214 (4th Cir. 2002); Seremeth v. Board of County Com'rs Frederick County, 673 F.3d 333, 336 n. 1 (4th Cir. 2012). The statutes share the same definitions of disability and Title II of the ADA provides that the "remedies, procedures, and rights" provided under Section 505 of the RA "shall be the remedies, procedures, and rights" that Title II of the ADA provides to persons alleging discrimination based on disability. Jarboe, 2013 WL 1010357 at *3 (citing 42 U.S.C. § 12133).

Nonetheless, two differences exist between the statutes. Under Title II of the ADA, a plaintiff must show discrimination "by reason of" disability. 42 U.S.C. § 12132. Under the RA, a plaintiff must show discrimination "solely by reason of" disability. 29 U.S.C § 794(a). Thus, the RA requires a higher standard of causation. Second, the RA applies only to federal agencies, programs, or activities receiving federal financial assistance. 29 U.S.C. § 794(a). In order to show a violation of the RA, a plaintiff must show that that the program or activity at issue receives federal financial assistance. Jarboe, 2013 WL 1010357 at *3.

**(1) Proper Defendant**

Defendants point out, correctly, that there is no individual liability under the ADA or the RA. Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam). The proper defendant in a case alleging ADA violations in a correctional facility is the agency overseeing the facility, or in this case, VDOC. Latson v. Clarke, 249 F.Supp.3d 838, 855-856 (W.D. Va. 2017). See also Young v. Barthow, No. RWT-07-662, 2007 WL 5253983 at *2 (D. Md. 2007) (dismissing individual defendants in ADA and RA lawsuit after finding individual liability precluded under both statutes). Accordingly, all Nolan's claims against the individual defendants brought under the ADA or RA are **DISMISSED**.

**(2) Eleventh Amendment Immunity and Claims For Money Damages**

Generally, the Eleventh Amendment provides immunity to state agencies from suits for money damages by citizens of another state, or its own state. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. Of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). However, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" Id. (quoting Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000)).

In United States v. Georgia, 546 U.S. 151 (2006), the Supreme Court considered whether Title II of the ADA allowed a suit for money damages against a state prison. The Court first noted that in enacting the ADA, Congress unequivocally intended to abrogate state sovereign immunity. Id. at 154. The Court then looked at whether Congress had acted

pursuant to a valid grant of constitutional authority under § 5 of the Fourteenth Amendment.[1]

The Court noted that "[w]hile members of this Court have disagreed regarding the scope of Congress's 'prophylactic' enforcement powers under § 5 of the Fourteenth Amendment … no one doubts that § 5 grants Congress the power to 'enforce … the provisions' of the Amendment by creating private remedies against the States for <u>actual</u> violations of those provisions." <u>Id.</u> at 158 (emphasis in original) (internal citations omitted). The Court then concluded: "Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that <u>actually</u> violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." <u>Id.</u> at 159 (emphasis in original). The Court did not address the issue of whether Congress's purported abrogation of sovereign immunity for misconduct which violated Title II of the ADA but did not violate the Fourteenth Amendment was valid. <u>Id.</u>

In this case, the court finds that Nolan has failed to state a claim for violation of his rights under the Fourteenth Amendment. Accordingly, even if Nolan had named VDOC as a defendant, he has failed to state a claim for damages against the agency. His claims for money damages under the ADA and RA are **DISMISSED**.

### (3) Prospective Injunctive Relief

Eleventh Amendment immunity does not apply to requests for prospective injunctive relief. <u>Fauconier v. Clarke</u>, 652 F.App'x 217, 220 (4th Cir. 2016) (citing <u>Verizon Md., Inc. v. Pub. Serv. Comm'n</u>, 535 U.S. 635, 645 (2002)). Nolan asks for injunctive relief in the form of

---

[1] "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S.C.A. Const. Amend. XIV, §5.

17

a transfer to Deerfield, so that he can receive services from the Virginia Department for the Blind and Impaired. Defendants contend that Nolan does not have standing to seek injunctive relief because he fails to allege an actual or imminent invasion of a legally protected interest and he fails to show any risk of substantial and irreparable harm at the hands of defendants.

In assessing a question of standing to sue, a court does not address the merits of a plaintiff's claim. Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 454 (4th Cir. 2017). Rather, the only aim is to assess "'whether [the] plaintiff has a sufficiently personal stake in the lawsuit to justify the invocation of federal court jurisdiction.'" Id. (quoting White Tail Park, Inc. v. Stroube, 412 F.3d 451, 460 (4th Cir. 2005)). Generally, in order to show standing, a plaintiff must show (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the conduct complained of, i.e., the injury must be traceable to the challenged action of the defendant; and (3) it must be likely rather than merely speculative that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). In the context of the ADA, a plaintiff may demonstrate an injury by showing an actual invasion of a legally protected interest that affects him in a personal and individual way. Nanni, 878 F.3d at 454-455 (citing Lujan, 504 U.S. at 560 and n. 1). In order to show standing to seek injunctive relief, a party must show a likelihood that he will suffer future injury. Id. at 455 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).

Nolan cannot show that he will suffer future injury at Green Rock because he no longer is housed there. Any claim he might have had for an injunction seeking transfer to Deerfield based on his claim that his vision impairment was not being accommodated at Green Rock

became moot when he was transferred to Sussex II. See Incumaa v. Ozmint, 507 F.3d 281, 286-287 (4th Cir. 2007) ("transfer of an inmate from a unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief"). Because Nolan is no longer is housed at Green Rock, a transfer would not address any harm he may have suffered there.

Also, Nolan is now housed in the Eastern District of Virginia and has a lawsuit pending there. A review of the docket in that case, Nolan v. Clarke, No. 2:18-CV-552 (E.D. Va), shows that Nolan has requested the same injunctive relief in that case as he did in the instant case and his claims currently are under consideration on the defendants' motion for summary judgment. See ECF Nos. 14, 15, 17, 42, 43, 49 in that case. His claim for injunctive relief in the form of a transfer to Deerfield will be addressed in that court. Accordingly, Nolan's claim for injunctive relief under the ADA and RA is **DISMISSED**.

## III. Conclusion

As discussed above, Nolan has failed to state a claim for relief under the Constitution, the ADA, or the RA. Therefore, defendants' motion to dismiss, ECF No. 16, is **GRANTED** and Nolan's complaint is **DISMISSED** in its entirety.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Dobson and to counsel of record for defendants.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: 10/04/19

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge